**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STATE FARM FIRE & CASUALTY CO. a/s/o<br>ALAN & HEATHER SHAW<br>2010 OAKWOOD DRIVE<br>HANOVER, PA  17331<br><br>        **Plaintiff,**<br><br>  v.<br><br>**BURKENTINE & SONS BUILDERS, INC.**<br>330 DUBS CHURCH ROAD<br>HANOVER, PA  17331<br><br>        **Defendant/Third-Party Plaintiff,**<br><br>and<br><br>**STONE RIDGE DEVELOPMENT<br>CORPORATION**<br>910 E CANAL STREET, SUITE 300<br>DOVER, PA 17315<br><br>        **Defendant/Third-Party Defendant,**<br><br>and<br><br>**BUILDERS SERVICES GROUP, INC. d/b/a<br>AMERICAN-HUNGERFORD BUILDING<br>PRODUCTS**<br>475 N. WILLIAMSON BOULEVARD<br>DAYTONA BEACH, FL 32114<br><br>        **Defendant/Third-Party Defendant.** | **Case No.:**<br><br>**1:17-CV-01773-CCC**<br><br><br><br><br>**NON-ARBITRATION** |

## AMENDED COMPLAINT

Plaintiff, State Farm Fire & Casualty Co. a/s/o Alan and Heather Shaw (hereinafter "Plaintiff"), by and through undersigned counsel, hereby demands judgment against Defendants, and complains against them as follows:

**PARTIES**

1. Plaintiff is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business located at One State Farm Place in Bloomington, Illinois; at all times relevant hereto, Plaintiff was duly authorized to engage in the business of insurance in the Commonwealth of Pennsylvania.

2. At all times relevant hereto, Plaintiff provided property insurance to Alan and Heather Shaw (hereinafter "subrogors") in connection with their property located at 2010 Oakwood Drive in Hanover, PA (hereinafter the "subject property") under a policy of insurance that was in full force and effect on all relevant dates and times.

3. In the wake of the incident described below, as a result of claims made on said policy (which were duly paid pursuant thereto), Plaintiff became subrogated to certain recovery rights and interests of subrogors for monies paid thereunder, including the claims giving rise to this action.

4. Defendant Burkentine & Sons Builders, Inc. (hereinafter "Burkentine" or collectively as "Defendants") is, upon information and belief, a Pennsylvania corporation with a principal place of business located at 330 Dubs Church Road in Hanover, Pennsylvania; at all times relevant hereto, Burkentine was engaged in the business of, *inter alia*, providing residential renovation, construction, and general-contracting services and related materials.

5. Defendant Stone Ridge Development Corporation (hereinafter "Stone Ridge" or collectively as "Defendants") is, upon information and belief, a Pennsylvania corporation with a principal place of business located at 910 E Canal Street in Dover, Pennsylvania; at all times

relevant hereto, Stone Ridge was – upon information and belief – engaged in the business of, *inter alia*, property development.

6. Defendant Builders Services Group, Inc. d/b/a American-Hungerford Building Products (hereinafter "Builders Services" or collectively as "Defendants") is, upon information and belief, a Florida corporation with a principal place of business located at 475 N. Williamson Boulevard in Daytona Beach, Florida.

## JURISDICTION AND VENUE

7. Jurisdiction is based on 28 U.S.C. §1332(a)(1) as the amount in controversy exceeds the jurisdictional threshold of this Court (exclusive of interest and costs), and the diversity requirement is met.

8. Venue is proper in this district based on 28 U.S.C. §1391(a) in that the events giving rise to this claim occurred within this district.

## STATEMENT OF FACTS

9. Stone Ridge and Burkentine were (respectively) the developer and general contractor responsible for the creation and construction of the subject property, including, *inter alia*, overseeing the planning, design and construction of the subject property and coordinating the various trades involved therein.

10. As part of the planning, design and construction of the subject property, Stone Ridge and Burkentine were responsible for overseeing and coordinating the design, construction, and insulation of the chimney-chase area, and chimney system at the subject property.

11. Builders Services was retained to perform the installation of the insulation at the subject property, including inter alia, insulation of the chimney-chase area.

12. On January 19, 2016, a fire erupted at the subject property due to the improper design, construction, and insulation of the chimney-chase area and chimney system; these improprieties allowed the fireplace's flue pipe (i.e. the exhaust pipe connecting to the stove) to be covered in spray insulation.

13. Investigation into this incident revealed that several conditions related to the improper planning, design, construction, and insulation of the chimney-chase area and chimney system contributed to its occurrence; these included, but were not limited to, the fact that there was no barrier to prevent the insulation from entering the stove-pipe chase and flue area, thereby allowing for the fire's ignition due to the heat of the flue and/or spray ash or embers.

14. As a direct and proximate result of the acts and/or omissions of Defendants (as are described more fully below), subrogors sustained damage to their property, as well as additional expenses and hardships besides, in an amount in excess of $250,000.00.

15. Subrogors made claims for such damages under their insurance policy; by operation of payments it made pursuant to the terms and condition of the policy, Plaintiff became subrogated to the recovery claims asserted in this action.

**COUNT I – NEGLIGENCE v. BURKENTINE**

16. Plaintiff repeats and re-alleges all of the allegations set forth in all above paragraphs as though they were fully set forth and repeated herein at length.

17. Burkentine owed subrogors a duty of care to, inter alia, monitor, inspect and see to it that its agents, servants, workmen, employees, servants and/or chosen subcontractors properly designed, constructed, and insulated the chimney-chase area at the subject property.

18. The aforementioned damages were the direct and proximate result of the negligence, carelessness and/or other unlawful conduct of Burkentine – including negligent acts and/or omissions as performed by and through its agents, servants, workmen, employees, servants and/or chosen subcontractors, acting within the course and scope of their employment and/or agency – more specifically described as follows:

    (a)    failing to exercise reasonable care in the performance of duties in the supervising of the design, construction and insulation of the chase and flue areas performed at the subject property, including, but not limited to, carelessly and negligently performing the following:

        (1)    failing to competently supervise the design, construction and insulation of the chase and flue areas in a safe and appropriate manner;

        (2)    failing to ensure that proper techniques were employed, and applicable safety procedures followed, as to the design, construction and insulation of the chase and flue areas; and/or

        (3)    failing to properly monitor the work of all agents and/or employees during the design, construction and insulation of the chase and flue areas to ensure compliance with applicable safety procedures.

    (b)    failing to adequately instruct, supervise and/or train servants, employees and agents as to the proper ways to perform the tasks set forth in subparagraph (a);

    (c)    failing to warn subrogors and others of the dangers resulting from the failure to exercise reasonable care as set forth in subparagraph (a), above;

    (d)    failing to provide, establish and/or follow proper and adequate controls so as to ensure the proper performance of the tasks set forth in subparagraph (a) above;

    (e)    failing to perform the tasks set forth in subparagraph (a) in conformity with prevailing industry and governmental specifications and standards;

    (f)    failing to retain competent, qualified and/or able agents, employees or servants to perform the tasks set forth in subparagraph (a) above; and/or

(g) violating the standards of care prescribed by statutes, rules, regulations, ordinances, codes, and/or industry customs applicable to this action.

19. As a direct and proximate result of such acts or omissions, the subject property was damaged and additional expenses were incurred in an amount in excess of $250,000.00; as described herein, Plaintiff became subrogated to claims relating thereto and asserted herein.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Burkentine – jointly, severally or in the alternative with the other Defendant(s) in this action – in an amount in excess of $250,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

### COUNT II – BREACH OF CONTRACT v. BURKENTINE

20. Plaintiff repeats and re-alleges all of the allegations set forth in all above paragraphs as though they were fully set forth and repeated herein at length.

21. In causing the damage as alleged herein, Burkentine breached the terms of its agreement with Stone Ridge (of which subrogors were intended third-party beneficiaries), i.e. Burkentine's construction contract with Stone Ridge, as expressed and/or implied therein and/or according to law.

22. Upon information and belief, Burkentine held itself out as a competent general contractor, representing that it possessed the necessary skill to properly construct the subject property.

23. Burkentine materially breached the agreement by failing to properly perform its work in a good and workmanlike manner in accordance with the terms of the contract, as well as

by (a) failing to use its best skill and attention in performing the work promised; (b) failing to provide subrogors with a habitable property; and/or (c) failing to adequately supervise and direct the work of its subcontractors.

24. For their part, subrogors performed all their obligations under the aforementioned agreement, as well as all conditions precedent to recovery on this count.

25. As a direct and proximate result of Burkentine's above-described breach(es) of its agreement, subrogors sustained damages.

26. Plaintiff became subrogated to certain rights and interests of subrogors as described herein, thereby giving rise to the claims asserted in this action.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Burkentine – jointly, severally or in the alternative with the other Defendant(s) in this action – in an amount in excess of $250,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

### COUNT III – BREACH OF IMPLIED WARRANTIES v. BURKENTINE

27. Plaintiff repeats and re-alleges all of the allegations set forth in all above paragraphs as though they were fully set forth and repeated herein at length.

28. In building and developing and serving as general contractor in creating the subject property, a residential structure, Burkentine impliedly warranted that it would build and sell the subject property in a reasonably workmanlike manner, safely functional and not defective, and deliver the subject property in a habitable condition.

29. The design, construction, and/or insulation of the chimney-chase and flue areas were not properly performed in a standard-compliant, competent, and workmanlike manner for the reasons set forth herein, and as such posed an uninhabitable hazard to subrogors and the subject property.

30. Accordingly, Burkentine breached implied warranties, as set forth above, on which subrogors had rights to rely.

31. Burkentine did not provide subrogors with a property – nor specifically chimney-chase and flue areas – designed, constructed or insulated in a good and workmanlike manner, nor conducive to creating a habitable property.

32. Subrogors used the subject property and the wood stove/fireplace in a foreseeable and ordinary manner, of which Burkentine should have been aware, and for which Burkentine's expertise was relied upon; and yet subrogors sustained the damages described herein due to the defects, breaches and negligence described above.

33. Plaintiff became subrogated to certain rights and interests of subrogors as described herein, thereby giving rise to the claims asserted in this action.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Burkentine – jointly, severally or in the alternative with the other Defendant(s) in this action – in an amount in excess of $250,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

### COUNT IV – NEGLIGENCE v. STONE RIDGE

34. Plaintiff repeats and re-alleges all of the allegations set forth in all above paragraphs as though they were fully set forth and repeated herein at length.

35. Stone Ridge owed subrogors a duty of care to, inter alia, monitor, inspect and see to it that its general contractor, Burkentine, and/or its agents, servants, workmen, employees, servants and/or chosen subcontractors properly designed, constructed, and insulated the chimney-chase and flue areas and its chimney system at the subject property.

36. The aforementioned damages were the direct and proximate result of the negligence, carelessness and/or other unlawful conduct of Stone Ridge – including negligent acts and/or omissions as performed by and through its general contractor, Burkentine, and/or its agents, servants, workmen, employees, servants and/or chosen subcontractors, acting within the course and scope of their employment and/or agency – more specifically described as follows:

    (a)    failing to exercise reasonable care in the performance of duties in the supervising of the design, construction and insulation of the chase and flue areas performed at the subject property, including, but not limited to, carelessly and negligently performing the following:

        (1)    failing to competently supervise the design, construction and insulation of the chase and flue areas in a safe and appropriate manner;

        (2)    failing to ensure that proper techniques were employed, and applicable safety procedures followed, as to the design, construction and insulation of the chase and flue areas; and/or

        (3)    failing to properly monitor the work of all agents and/or employees during the design, construction and insulation of the chase and flue areas to ensure compliance with applicable safety methods and procedures.

    (b)    failing to adequately instruct, supervise and/or train servants, employees and agents as to the proper ways to perform the tasks set forth in subparagraph (a);

    (c)    failing to warn subrogors and others of the dangers resulting from the failure to exercise reasonable care as set forth in subparagraph (a), above;

    (d)    failing to provide, establish and/or follow proper and adequate controls so as to ensure the proper performance of the tasks set forth in subparagraph (a) above;

(e) failing to perform the tasks set forth in subparagraph (a) in conformity with prevailing industry and governmental specifications and standards;

(f) failing to retain competent, qualified and/or able agents, employees or servants to perform the tasks set forth in subparagraph (a) above; and/or

(g) violating the standards of care prescribed by statutes, rules, regulations, ordinances, codes, and/or industry customs applicable to this action.

37. As a direct and proximate result of such acts or omissions, the subject property was damaged and additional expenses were incurred in an amount in excess of $250,000.00; as described herein, Plaintiff became subrogated to claims relating thereto and asserted herein.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Stone Ridge – jointly, severally or in the alternative with the other Defendant(s) in this action – in an amount in excess of $250,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

### COUNT V – BREACH OF CONTRACT v. STONE RIDGE

38. Plaintiff repeats and re-alleges all of the allegations set forth in all above paragraphs as though they were fully set forth and repeated herein at length.

39. In causing the damage as alleged herein, Stone Ridge breached the terms of the above-described agreement with Burkentine (of which subrogors were intended third-party beneficiaries), as expressed and/or implied therein and/or according to law.

40. Upon information and belief, Stone Ridge held itself out as a competent property-developer, representing that it possessed the necessary skill to properly construct the subject property.

41. Stone Ridge materially breached the agreement by failing to properly perform its duties in a good and workmanlike manner in accordance with the terms of the agreement, as well as by (a) failing to use its best skill and attention in performing the duties promised; (b) failing to provide subrogors with a habitable property; and/or (c) failing to adequately supervise and direct the work of Burkentine and/or its agents and subcontractors.

42. For their part, subrogors performed all their obligations under the aforementioned agreement, as well as all conditions precedent to recovery on this count.

43. As a direct and proximate result of Stone Ridge's above-described breach(es) of its agreement, subrogors sustained damages.

44. Plaintiff became subrogated to certain rights and interests of subrogors as described herein, thereby giving rise to the claims asserted in this action.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Stone Ridge – jointly, severally or in the alternative with the other Defendant(s) in this action – in an amount in excess of $250,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**COUNT VI – BREACH OF IMPLIED WARRANTIES v. STONE RIDGE**

45. Plaintiff repeats and re-alleges all of the allegations set forth in all above paragraphs as though they were fully set forth and repeated herein at length.

46. In serving as property developer in creating the subject property, a residential structure, Stone Ridge impliedly warranted that it would plan and build the subject property in a

reasonably workmanlike manner, safely functional and not defective, and deliver the subject property in a habitable condition.

47. The design, construction, and/or insulation of the chimney-chase and flue areas was not performed in a standard-compliant, competent, and workmanlike manner for the reasons set forth herein, and as such posed an uninhabitable hazard to subrogors and the subject property.

48. Accordingly, Stone Ridge breached implied warranties, as set forth above, on which subrogors had rights to rely.

49. Stone Ridge did not provide subrogors with a property – nor specifically chimney-chase and flue areas – designed, constructed or insulated in a good and workmanlike manner, nor conducive to creating a habitable property.

50. Subrogors used the subject property and the wood stove in a foreseeable and ordinary manner, of which Stone Ridge should have been aware, and for which Stone Ridge's expertise was relied upon; and yet subrogors sustained the damages described herein due to the defects, breaches and negligence described above.

51. Plaintiff became subrogated to certain rights and interests of subrogors as described herein, thereby giving rise to the claims asserted in this action.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Stone Ridge – jointly, severally or in the alternative with the other Defendant(s) in this action – in an amount in excess of $250,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**COUNT VII – NEGLIGENCE v. BUILDERS SERVICES**

52. Plaintiff repeats and re-alleges all of the allegations set forth in all above paragraphs as though they were fully set forth and repeated herein at length.

53. Builders Services owed subrogors a duty of care to, *inter alia*, monitor, inspect and see to it that its agents, servants, workmen, employees, and/or chosen subcontractors safely and properly insulated the chimney-chase area at the subject property.

54. The aforementioned damages were the direct and proximate result of the negligence, carelessness and/or other unlawful conduct of Builders Services – including negligent acts and/or omissions as performed by and through its agents, servants, workmen, employees, servants and/or chosen subcontractors, acting within the course and scope of their employment and/or agency – more specifically described as follows:

    (a) failing to exercise reasonable care in the performance of duties in the supervising of the insulation of the chase and flue areas performed at the subject property, including, but not limited to, carelessly and negligently performing the following:

        (1) failing to competently supervise insulation of the chase and flue areas in a safe and appropriate manner;
        (2) failing to ensure that proper techniques were employed, and applicable safety procedures followed, as to the insulation of the chase and flue areas; and/or
        (3) failing to properly monitor the work of all agents and/or employees during the insulation of the chase and flue areas to ensure compliance with applicable safety procedures.

    (b) failing to adequately instruct, supervise and/or train servants, employees and agents as to the proper ways to perform the tasks set forth in subparagraph (a);

    (c) failing to warn subrogors and others of the dangers resulting from the failure to exercise reasonable care as set forth in subparagraph (a), above;

    (d) failing to provide, establish and/or follow proper and adequate controls so as to ensure the proper performance of the tasks set forth in subparagraph (a) above;

    (e)    failing to perform the tasks set forth in subparagraph (a) in conformity with prevailing industry and governmental specifications and standards; and/or

    (f)    failing to retain competent, qualified and/or able agents, employees or servants to perform the tasks set forth in subparagraph (a) above; and/or

    (g)    violating the standards of care prescribed by statutes, rules, regulations, ordinances, codes, and/or industry customs applicable to this action.

55.    As a direct and proximate result of such acts or omissions, the subject property was damaged and additional expenses were incurred in an amount in excess of $250,000.00; as described herein, Plaintiff became subrogated to claims relating thereto and asserted herein.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Builders Services – jointly, severally or in the alternative with the other Defendant(s) in this action – in an amount in excess of $250,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

### COUNT VIII – BREACH OF CONTRACT v. BUILDERS SERVICES

56.    Plaintiff repeats and re-alleges all of the allegations set forth in all above paragraphs as though they were fully set forth and repeated herein at length.

57.    In causing the damage as alleged herein, Builders Services breached the terms of its subcontractor agreement with Burkentine,; subrogors were an intended third-party beneficiary of said agreement.

58.    Upon information and belief, Builders Services held itself out as competent insulation installers, representing that they possessed the necessary skill and expertise to properly insulate the subject property.

59. Builders Services materially breached the agreement by failing to properly perform its work in a good and workmanlike manner in accordance with the terms of the contract, as well as by (a) failing to use its best skill and attention in performing the work promised; (b) failing to provide subrgors with a habitable property; and (c) failing to adequately supervise and direct the work of its subcontractors.

60. For their part, subrogors performed all their obligations under the aforementioned agreement, as well as all conditions precedent to recovery on this count.

61. As a direct and proximate result of Builders Services's above-described breach(es) of their agreement, subrogors sustained damages.

62. As described herein, Plaintiff became subrogated to certain rights and interests of subrogors, thereby giving rise to the claims asserted in this action.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Builders Services – jointly, severally or in the alternative with the other Defendant(s) in this action – in an amount in excess of $250,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**COUNT IX – BREACH OF IMPLIED WARRANTIES v. BUILDERS SERVICES**

63. Plaintiff repeats and re-alleges all of the allegations set forth in all above paragraphs as though they were fully set forth and repeated herein at length.

64. In serving as the insulation installer at the subject property, a residential structure, Defendants impliedly warranted that they would insulate the subject property in a reasonably

workmanlike manner, safely functional and not defective, and render the subject property in a habitable condition.

65. The insulation of the chimney-chase and flue areas were not performed in a standard-compliant, competent, and workmanlike manner for the reasons set forth herein, and as such posed a hazard to subrogors and the subject property.

66. Accordingly, Builders Services breached implied warranties, as set forth above, on which subrogors had rights to rely.

67. Defendants did not provide subrogors with a property – nor specifically chimney-chase and flue areas – insulated in a good and workmanlike manner, nor conducive to creating a habitable property.

68. Subrogors used the subject property and in particular its wood stove/fireplace in a foreseeable and ordinary manner, of which Defendants should have been aware, and for which Defendants' expertise was relied upon; and yet subrogors sustained the damages described herein due to the defects, breaches and negligence described above

69. Plaintiff became subrogated to certain rights and interests of subrogors as described herein, thereby giving rise to the claims asserted in this action.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Builders Services – jointly, severally or in the alternative with the other Defendant(s) in this action – in an amount in excess of $250,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**de LUCA LEVINE LLC**

By:    *s/ Daniel J. de Luca*

DANIEL J. de LUCA,
ATTORNEYS FOR PLAINTIFFS
PA ATTORNEY I.D. NO.: 74727
Three Valley Square, Suite 220
Blue Bell, PA 19422
(215) 383-0166 (Telephone)
(215) 383-0082 (Fax)
ddeluca@delucalevine.com

Dated: March 21, 2018